**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Henry ESPINOSA, Defendant-Appellant.**

**No. 84–1899.**

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 1986.

---

Stanley Kotovsky, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty. and Larry Gomez, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Alex Reisman, San Francisco, Cal., for defendant-appellant.

Before LOGAN and MOORE, Circuit Judges, and WEST *, District Judge.

LEE R. WEST, District Judge.

### Introduction

Defendant was indicted for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting in violation of 18 U.S.C. § 2. The district court denied defendant's pretrial motion to suppress cocaine found in his car. Defendant then entered a conditional plea of guilty under Rule 11(a)(2), Fed.R.Crim.P.

Defendant now appeals the denial of his motion to suppress, contending:

(1) his detention at the border patrol checkpoint was an unconstitutional seizure of of his person in violation of the Fourth Amendment;

(2) his consent to the search was invalid; and

(3) the search exceeded the scope of his consent.

---

* The Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

*Facts*

The Border Patrol operates a permanent immigration checkpoint on Interstate Highway 10, seventeen miles west of Las Cruces, New Mexico. All westbound traffic on I–10 is stopped. On January 14, 1984, Luis Arguello and defendant were traveling westbound on I–10 in defendant's automobile, a 1978 Ford Granada. Arguello was driving. Defendant was riding in the front passenger seat. At the checkpoint, Border Patrol Agent Jones directed the Granada to a secondary inspection area.

Border Patrol Agent Teuber manned the secondary inspection area. His questioning of Arguello and defendant lasted no more than a minute or two. He asked Arguello and defendant about their citizenship and immigration status. Both Arguello and defendant speak and understand English. Arguello stated he was born in Puerto Rico. Defendant stated he was born in Nicaragua, but had become naturalized and produced a United States passport. Agent Teuber noticed the Granada had no permanent license plates, just a temporary Florida license plate in the rear window. Defendant stated that he had just bought the Granada two weeks ago. Agent Teuber observed that after every question he asked, Arguello and defendant would hesitate momentarily and look at each other before answering. Upon further inquiry, defendant stated he had been on vacation in Florida and that he was driving from Miami back to his home in California, where he is a sheet metal worker. Arguello said he was going to California to look for work. However, Agent Teuber observed very little luggage in the car. Agent Teuber then commented that there are a lot of drugs coming from Miami, going to California and asked Arguello and defendant if they had any drugs in the car. Both claimed they did not. Agent Teuber then asked both Arguello and defendant if he could search the car. Both consented. Specifically, defendant stated: "No problem. Go ahead." Agent Teuber discovered three packages of cocaine in the Granada's left rear quarter panel.

## I.

### Defendant's Detention

Defendant asserts that his detention at the Border Patrol checkpoint was an unconstitutional seizure of his person in violation of the Fourth Amendment. Defendant urges that detention at a secondary inspection area of a permanent border patrol checkpoint is lawful only when the agent's inquiry is brief and focuses solely on the question of citizenship. Defendant claims that further detention or inquiry into any other area constitutes an unconstitutional seizure of his person. We disagree.

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, and effects, against unreasonable searches and seizures, shall not be violated....

The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *United States v. Sharpe,* —— U.S. ——, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

In *United States v. Cooper,* 733 F.2d 1360, 1363 (10th Cir.) *cert. denied sub. nom., Threat v. United States,* —— U.S. ——, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984), we identified three categories of police/citizen encounters. The first is referred to as a consensual police-citizen encounter. This encounter is characterized by voluntary co-operation of a citizen in response to non-coercive questioning. A consensual encounter is not a seizure within the meaning of the Fourth Amendment.

The second category is referred to as an investigative detention, or a *Terry* stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

The third category, an arrest, is a seizure characterized by highly intrusive or lengthy search or detention. An arrest is justified only when there is probable cause to believe that a person is committing or has committed a crime.

We use these categories as guidelines only. We do not suggest that there is a litmus-paper test for distinguishing a consensual encounter from a seizure or for determining when a seizure exceeds the bounds of investigative detention. *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (White, J., plurality opinion). "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Sharpe*, —— U.S. at ——, 105 S.Ct. at 1575. Therefore, in determining whether defendant's detention was reasonable, we examine the totality of all the circumstances.

Defendant was detained at a secondary inspection area of a permanent Border Patrol checkpoint. In *United States v. Martinez-Fuerte*, 428 U.S. 543, 566, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116 (1976), the Supreme Court held that

> ".... stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment and need not be authorized by warrant. The principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop. See *Terry v. Ohio*, 392 U.S. at 24–27 [88 S.Ct. at 1881–83]; *United States v. Brignoni-Ponce*, 422 U.S. at 881–882 [95 S.Ct. at 2580]."

The border agent may question the driver and passengers about their citizenship and immigration status, and ask them to explain suspicious circumstances. Any further detention must be based on consent or probable cause. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

Here, Agent Teuber's questioning of Arguello and defendant lasted no more than a minute or two. In that brief period of time, Agent Teuber asked Arguello and defendant about their citizenship and immigration status. Arguello and defendant hesitated and look at each other before answering questions. Defendant's car had only a temporary Florida license plate in the back window. Defendant claimed he was on vacation, but had very little luggage. The Supreme Court has noted that Florida, in addition to being a popular vacation site, is also well known as a source of narcotics and other illegal drugs. *Illinois v. Gates*, 462 U.S. 213, 243, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983). The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances. Agent Teuber's inquiry about drugs accounted for but a moment of defendant's brief detention and was based upon specific and articulable facts and rational inferences. As the Supreme Court stated in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), quoted with approval in *Hayes v. Florida*, —— U.S. ——, ——, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705, 710 (1985), in addressing the reach of a *Terry* stop:

> [a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

We hold defendant's initial stop and brief detention at the checkpoint were proper and lawful.

### Defendant's Consent to Search

Checkpoint searches removed from the border and its functional equivalents are constitutional only if justified by consent or probable cause to search. *Martinez-Fuerte*, 428 U.S. at 567, 96 S.Ct. at 3087. Since the search of defendant's automobile was not preceded by an impermissible seizure of his person, he cannot contend that his apparent consent to the subsequent search was infected by an unlawful detention. However, we must still consider whether defendant's consent to search is

otherwise valid. In *United States v. Lopez*, 777 F.2d 543, 548 (10th Cir.1985) we stated:

Consent to search is valid if it is voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 [93 S.Ct. 2041, 2043, 36 L.Ed.2d 854] (1973). Consent to search is voluntary if it is not the product of duress or coercion, express or implied. *Id.* at 227 [93 S.Ct. at 2047]. This court has set forth the requirements necessary to establish voluntary consent. "(1) There must be clear and positive testimony that consent was 'unequivocable and specific' and 'freely and intelligently' given; (2) the Government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived." *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.1977). *See also United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir.1985). Ultimately, the determination of "voluntariness" for consent cases is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 227 [93 S.Ct. at 2047]; *United States v. Sor-Lokken*, 557 F.2d 755, 757 (10th Cir.1977), *cert. denied*, 434 U.S. 894 [98 S.Ct. 274, 54 L.Ed.2d 181] (1977). In reviewing a denial of a motion to suppress, the trial court's finding of fact must be accepted by this court unless clearly erroneous, *United States v. Cooper*, 733 F.2d 1360, 1364 (10th .Cir.1984), with the evidence viewed in the light most favorable to the district court's finding. *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir. 1984).

Agent Teuber asked both Arguello and defendant for permission to search. Both Arguello and defendant were cooperative. Specifically, defendant said: "No problem. Go ahead." No threat, promise or force was used to obtain the consent. Defendant stood by and watched as Agent Teuber searched the automobile and at no time objected. We hold the district court's finding that defendant voluntarily consented to the search is not clearly erroneous.

### Scope of search

Defendant's final contention is that the search exceeded the scope of the consent. Defendant urges that Agent Teuber's request for permission to "look through" defendant's automobile was so vague that defendant may not have understood the extent of the search.

Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances. *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir.) *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). We will uphold the trial court's determination unless it is clearly erroneous. Here, both Arguello and defendant stood by and watched as the search was conducted. The search began with the trunk. Agent Teuber looked underneath the rug in the trunk and throughout the trunk padding. He asked for and received permission to look through the few pieces of luggage in the trunk. He then examined the automobile's interior and spotted a screwdriver lying on the floorboard. He looked in the glove box, under the dashboard, the heater area, and under the front seats. He also looked under the front seat rug. He then examined the back seat rug and the back seat itself. Upon removal of the back seat, Agent Teuber spotted two screws missing from the car's left rear quarter panel. Other screws were loose and had tool marks on them. The panel was loose on one corner. Agent Teuber lifted up the loose corner and spotted the cocaine.

Defendant stood beside his car expressing no concern during this thorough and systematic search. The search lasted approximately fourteen minutes. At no time did defendant attempt to retract or narrow his consent. Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent.

Further, defendant testified on his own behalf at the motion to suppress hearing. However, he chose to limit his testimony to simply confirming ownership of the automobile. At no time did he testify that he was confused as to the extent of the search, nor did he testify that the search exceeded the scope of his consent. The trial court's finding of fact that the search was within the scope of the consent is not clearly erroneous.

### Conclusion

The trial court properly denied defendant's motion to suppress. The cocaine obtained from the search of defendant's automobile is admissible. The judgment of the trial court is AFFIRMED.