[No. F016523. Fifth Dist. Sept. 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LAMAR CRENSHAW, Defendant and Appellant.

COUNSEL

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Roger E. Venturi and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BIANCHI, J.*—

INTRODUCTION

This case presents the following question: Is a suspect's Fourth Amendment right to be free from unreasonable searches violated when, after the suspect gives an officer consent to search the interior, glove compartment and trunk of his vehicle for drugs, the officer removes a screw from a plastic door vent and disengages the vent?

Before trial, the defendant moved to suppress contraband found in the door panel on the ground, inter alia, his consent to search the car did not extend to removing the screw and disengaging the vent from the door post. The trial court denied the motion. The court cited *Florida* v. *Jimeno* (1991) 500 U.S. __ [114 L.Ed.2d 297, 111 S.Ct. 1801] for the proposition it was objectively reasonable for the officer to conclude the defendant's consent to a search of the interior of his car, glove compartment and trunk for drugs included consent to remove a suspicious door vent. Thereafter, defendant entered a guilty plea to certain of the charges stemming from the search; this appeal followed, raising the denial of the motion to suppress. (Pen. Code, §§ 1237, 1538.5, subd. (m).)[1]

---

*Retired Judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Although Crenshaw notices his appeal to be "from the denial of his Motion to Suppress pursuant to Penal Code Section 1538.5," his appeal is from the judgment. (Pen. Code, § 1237.) We review the denial of the motion to suppress. (Pen. Code, § 1538.5, subd. (m); see *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1202 [269 Cal.Rptr. 862].)

## Facts Before the Trial Court on the Motion to Suppress[2]

This case began when, shortly after midnight on February 18, 1991, California Highway Patrol Officer Richard Randolph observed a 1981 Cadillac exit Highway 99 at the Avenue 280 exit in Tulare County. When the automobile failed to observe a stop sign at Avenue 280, Randolph activated his emergency lights and brought the vehicle to a stop. The 20-year-old driver, who identified himself as David Morgan (later charged by information as David Crenshaw), was the sole occupant of the vehicle. He produced a temporary vehicle registration in the name of David Morgan, but did not produce a driver's license. The driver exited the vehicle and walked to where Randolph's patrol car was parked while Randolph issued a traffic citation for failing to stop at the stop sign. The driver signed the citation in the name of David Morgan.

From the outset of the stop Randolph's attention was drawn to the driver's expensive dress and jewelry and the fact he was wearing a pager at his belt. Based upon Randolph's training in the components of the drug courier profile, and the driver's apparent lack of personal identification, Randolph suspected he might be transporting drugs. While writing the citation, Randolph "asked him directly" if he "had any drugs in the vehicle" and whether he could search the vehicle "for drugs." He specifically asked if he could search the trunk as part of the search. The driver denied "carrying any drugs" and gave Randolph permission to "search his vehicle."

Randolph and the driver walked to the automobile; the driver opened the driver's side door to get the keys in order to open the trunk. When Randolph looked at the doorpost, he saw "the screw that was securing the plastic vent to the door post had striation marks, that in [his] opinion the screw had been worked and tampered with recently." After the driver opened the trunk, Randolph and his partner, Officer Parrish, searched the trunk but did not find any contraband. After obtaining "consent to check in the inside [of] the vehicle in the glove compartment," Parrish searched the glove compartment and found letters bearing the name Crenshaw.

Parrish initiated a record and warrant check into the name Morgan and later, after the letters were discovered, into the name Crenshaw. The record check disclosed the driver, hereinafter referred to as Crenshaw, had a suspended operating license. A tow truck was then called to remove his

---

[2]The defendant based the motion in the trial court on his points and authorities, the transcript of the preliminary examination and the evidence to be presented at the motion hearing. Both parties have incorporated facts from the preliminary and motion hearings.

vehicle. A further record check disclosed outstanding arrest warrants, where-upon Crenshaw was detained and the local sheriff's department summoned. When the tow truck operator arrived, Randolph placed Crenshaw in the patrol vehicle (the sheriff's deputy had not yet arrived), obtained a screw-driver from the tow truck operator and removed the tool-marked screw from the door vent. Randolph never sought specific permission to remove the door vent.

The interior door post, previously covered by the vent, contained a loaded, .38-caliber automatic weapon and a torn paper bag containing 49.3 grams of cocaine base packaged in aluminum foil and divided into 14 one-eighth-ounce plastic packages. Randolph could not see the drugs in the (louvered) vent door panel until he removed the vent.

## CONSENT UNDER THE FOURTH AMENDMENT

■ The touchstone of the Fourth Amendment is reasonableness. (*Katz* v. *United States* (1967) 389 U.S. 347, 359 [19 L.Ed.2d 576, 586-587, 88 S.Ct. 507].) As explained in *Illinois* v. *Rodriguez* (1990) 497 U.S. 177, 183 [111 L.Ed.2d 148, 110 S.Ct. 2793, 2799] the Fourth Amendment does not pro-scribe all state-initiated searches and seizures; it merely condemns those which are unreasonable. Reasonableness is determined by balancing "the intrusion on the individual's Fourth Amendment interests against its promo-tion of legitimate governmental interests." (*Maryland* v. *Buie* (1990) 494 U.S. 325, 331 [108 L.Ed.2d 276, 284, 110 S.Ct. 1093].)

■ "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]" (*Florida* v. *Jimeno, supra,* 500 U.S. at pp. __-__ [114 L.Ed.2d at p. 302, 111 S.Ct. at pp. 1803-1804].) Generally, the scope of a warrantless search is defined by its expressed object. (*United States* v. *Ross* (1982) 456 U.S. 798, 824 [72 L.Ed.2d 572, 593, 102 S.Ct. 2157].) A consensual search may not legally exceed the scope of the consent supporting it. (*Walter* v. *United States* (1980) 447 U.S. 649, 656-657 [65 L.Ed.2d 410, 417-418, 100 S.Ct. 2395].) Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances. (*United States* v. *Sierra-Hernandez* (9th Cir. 1978) 581 F.2d 760, 764, cert. den. (1978) 439 U.S. 936 [58 L.Ed.2d 333, 99 S.Ct. 333].) Unless clearly erroneous, we uphold the trial court's determination.

### Does Removal of a Vent From a Doorpost Fall Within the Scope of a Suspect's Consent to Search His Car "For Drugs"?

 ██ ██ Crenshaw argues "the additional search of the door post by dismantling and removing a screwed-on vent exceeded the scope of any consent . . . given to search the car."[3] Crenshaw relies on *Florida* v. *Jimeno*, *supra*, 500 U.S. __ [114 L.Ed.2d 297, 111 S.Ct. 1801]. There the Supreme Court stated, at page __ [114 L.Ed.2d at p. 303, 111 S.Ct. at p. 1804]: "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Since the consent in *Jimeno* contained no limitation on the scope of the search for drugs, the United States Supreme Court reversed the Florida Supreme Court and upheld the subsequent search of a paper bag found on the floor of the passenger compartment.

In deciding *Jimeno*, the Supreme Court expressly distinguished *Jimeno's* facts from those in *State* v. *Wells* (Fla. 1989) 539 So.2d 464.

The United States Supreme Court in *Jimeno* said:

"Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. 'Contraband goods rarely are strewn across the trunk or floor of a car.' [Citation.] The

---

[3]As a threshold issue, Crenshaw argues his consent was not voluntary; rather it was a response to an assertion of authority. His counsel argued to the trial court there was no "real informed consent" to search the vehicle because Randolph asked for permission to search. Trial counsel characterized Crenshaw's acquiescence to the search as "submission to authority."

Appellant resurrects this argument here, this time citing to a portion of Randolph's testimony wherein he stated he "directed" Crenshaw to open the trunk. The sole transcript reference is taken out of context; the officer immediately clarified his questions were couched in the form of a "request," and this is supported by his testimony taken as a whole. Viewing the record in its entirety, we cannot state the trial court's implied determination that Crenshaw's consent was freely and voluntarily given is not supported by substantial evidence. (*People* v. *Bittaker* (1989) 48 Cal.3d 1046, 1074 [259 Cal.Rptr. 630, 774 P.2d 659]; *People* v. *Ratliff* (1986) 41 Cal.3d 675, 686 [224 Cal.Rptr. 705, 715 P.2d 665].)

authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

"The facts of this case are therefore different from those in *State v. Wells* [(1989) 539 So.2d 464], on which the Supreme Court of Florida relied in affirming the suppression order in this case. There the Supreme Court of Florida held that consent to search the trunk of a car did not include authorization to pry open a locked briefcase found inside the trunk.[4] It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." (*Florida v. Jimeno, supra*, 500 U.S. at p. __ [114 L.Ed.2d at p. 303, 111 S.Ct. at p. 1804].)

Crenshaw maintains "[t]he dismantling of the automotive door post vent and search of [his] doorpost more closely approximates the prying open of a locked briefcase that was condemned in *Wells* than the opening [of] a brown paper bag found on the floor of the car in *Jimeno*."

The federal courts have dealt with the precise issue raised here—the removal of an automobile panel vent pursuant to general consent to search a vehicle for contraband—and prior to *Florida v. Jimeno* are divided. While neither the parties below nor counsel on appeal cite these cases, they are useful to our analysis.

*Pre-Jimeno Cases Upholding Panel Searches*
*as Within Scope of Consent*

The Tenth Circuit Court of Appeals has consistently upheld such panel searches. In *United States v. Torres* (10th Cir. 1981) 663 F.2d 1019, defendants, suspects in a bank robbery, were stopped at a service station. Torres, the apparent owner of a Firebird reported used in the getaway, signed a consent giving the police authority to make a " 'complete' " search of the car. An officer conducting what was apparently the last of several searches of the vehicle was able to see money in the well of an ashtray he pulled out from the door. The officer removed the air-vent cover in the side of the door because the vent was connected to the ashtray well. In the interior of the door he found a bag of money which contained marked bills from the bank robbery. (*Id.* at p. 1021.)

---

[4] The holding in *State v. Wells, supra*, 539 So.2d 464 was affirmed in *Florida v. Wells* (1990) 495 U.S. 1 [109 L.Ed.2d 1, 110 S.Ct. 1632] on the narrow ground that police may not be given total discretion to decide whether to open closed containers found during an inventory search.

Torres argued his consent had been revoked when he told a Federal Bureau of Investigation officer, after one of the prior searches produced a wallet belonging to one of the robbery victims, "that he did not mind the police looking through his car, but he had not intended it to be torn apart." This information was never relayed to the local police. (663 F.2d at p. 1021.) The *Torres* court was unconvinced there was any revocation of the authority to search and approved the scope of the search: "Unquestionably Torres gave his voluntary consent when he signed the form which was provided him. This explained that a complete search was to be made, and thus, of course, it logically follows permission to search contemplates a thorough search. If not thorough it is of little value. [Citation.] A complete search was authorized, and it should have been anticipated that it would be a careful one, although the defendant may have thought that the officers might overlook that money." (663 F.2d. at p. 1027.)

In *United States* v. *Espinosa* (10th Cir. 1986) 782 F.2d 888, suspicious conduct by the occupants of the defendant's vehicle at a border patrol checkpoint prompted a border patrol agent to raise the subject of drug trafficking and inquire whether defendant and his passenger "had any drugs in the car." Both claimed they did not. After obtaining consent from each to search the car, the agent looked under the carpeting in the interior and trunk and "throughout the trunk padding," as well as the glove box and under the seats. He observed a screwdriver lying on the floorboard. When he removed the backseat, the agent noticed two screws securing the car's left rear quarter panel were missing. Other screws were loose and showed "tool marks." He lifted the panel on a corner where it was loose and found cocaine. (*Id.* at pp. 890, 892.) Again, the court upheld the search: "Defendant stood beside his car expressing no concern during this thorough and systematic search. The search lasted approximately fourteen minutes. At no time did defendant attempt to retract or narrow his consent. Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." (782 F.2d at p. 892.)

In *U.S.* v. *Pena* (10th Cir. 1990) 920 F.2d 1509, the same circuit affirmed a determination by the trial court that a police officer did not exceed the scope of a consent search by examining openings to the door panel of a vehicle. A routine speeding stop by a highway patrol officer yielded some inconsistencies regarding the ownership of the vehicle; Pena claimed it belonged to his brother in Chicago, while a National Crime Information Center computer search reported it belonged to a Yolanda Diaz of Santa

Barbara, California. Pena denied knowledge of a Yolanda Diaz, and responded with a shrug of his shoulders when informed the car was registered in her name. The officer asked Pena if he knew what was in the trunk; Pena responded there was nothing of interest and asked if the officer wanted to look. When the patrolman indicated he did, Pena opened the trunk to reveal nothing of note. When the officer asked if he could look inside the vehicle, Pena indicated he "did not mind" and walked to the rear of the auto. Pena denied any narcotics or firearms were in the vehicle. When the patrolman noticed the rear bottom seat cushion was ajar, he obtained permission to remove a suitcase lying on it. The officer entered the rear seat area and observed "loose, crooked, and missing screws on the interior molding and tool marks on the screws and molding." (*Id.* at pp. 1511-1512.)

After he exited the vehicle, the officer tapped the outer rear fender on the passenger side and heard a "solid thud" rather than the anticipated hollow sound. With a pen, he probed the vent opening in the rear quarter panel where the passenger door closed and struck a solid object which moved when he applied pressure to it. During this period Pena walked away from the vehicle and ignored the officer. The officer obtained a screwdriver from the patrol vehicle and removed the rear quarter panel vent and a piece of cardboard under it. He found several boxes containing cocaine. (920 F.2d at p. 1512.)

The court rejected Pena's argument that the removal of the vent panel exceeded the scope of his consent to look inside the car. The court recounted Pena's cooperation and lack of objection throughout the inspection of the car. "At no time did [Pena] object to or express any concern about the officer's activities. He never attempted to limit or retract his consent." (*U.S. v. Pena, supra,* 920 F.2d at p. 1515.) Citing to the preceding opinion by the Tenth Circuit, noted *ante,* the court reasoned:

"As the *Espinosa* court recognized, '[f]ailure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent,' 782 F.2d at 892. We will not attach an unduly restrictive meaning to the officer's request to 'look' inside the vehicle. No evidence was presented by Pena that he at any time objected to the search as it was conducted. The search was conducted within the general scope of the permission granted. Accordingly, we do not find clearly erroneous the trial court's determination that the search was valid." (920 F.2d at p. 1515.)

*Pre-Jimeno Case Not Upholding Panel Search
as Within Scope of Consent*

The court in *U.S. v. Garcia* (7th Cir. 1990) 897 F.2d 1413 reached a contrary result on the scope of general consent to search a vehicle. There, a

speeding stop led to a suspicion Garcia, the driver of the speeding truck, might be an escaped felon. The officer asked Garcia whether there were any " 'drugs or weapons in the vehicle.' " When the answer was negative, the officer asked if he could take "a look." Garcia and his passenger each consented. The officer found a message beeper in the glove compartment, noticed none of the doors had window cranks or door handles and that "mismatched and ill-fitting screws . . . held the interior door panels in place." Upon closer inspection, while looking through the window slot, he observed packages wedged inside the door. Based on this observation, the officer removed the driver's side door panel to disclose numerous packages containing marijuana. (*Id.* at pp. 1415-1416.)

The *Garcia* court disagreed with the trial court's finding that the scope of the search did not exceed the consent given: "[The officer's] request to search was directly linked to his inquiry regarding the presence of drugs or weapons in the truck. Without more, police can only search areas these items may reasonably be expected to be found. The opening of door panels is not normally included in this set of areas to be searched. Such a search is inherently invasive, and extends beyond the consent given under these circumstances." (897 F.2d at pp. 1419-1420.) Nevertheless, the *Garcia* court proceeded to uphold the search on the basis of probable cause, i.e., the ill-fitting and mismatched screws on the door panel, inter alia, led to a visual observation through the window opening of the packages in the door panel. (*Id.* at p. 1420.)

## DISCUSSION

Here we find the facts of the case before us are more akin to *Jimeno* than *Wells*. *Wells* and similar pre-*Jimeno* cases where courts have determined a search exceeded the reasonable bounds of the consent given are distinguishable.[5] ■ As stated in *U.S.* v. *Strickland* (11th Cir. 1990) 902 F.2d 937, 939, where the court held the cutting open of a spare tire during a consent search of a vehicle was impermissible: "Although an individual consenting to a vehicle search should expect that search to be thorough, he need not anticipate that the search will involve the destruction of his vehicle, its parts or contents. Indeed, it is difficult to conceive of any circumstance in which an individual would voluntarily consent to have the spare tire of their [*sic*] automobile slashed. Unless an individual specifically consents to police

---

[5] See also *Cross* v. *State* (Fla. 1990) 560 So.2d 228, 230 (defendant's consent to search of her tote bag did not authorize "cutting into or breaking open sealed containers located therein").

conduct that exceeds the reasonable bounds of a general statement of consent, that portion of the search is impermissible." (*Id.* at p. 942.)

*Post-Jimeno Case*

In a post-*Jimeno* case, a federal court impliedly distinguished the *Wells* situation while upholding a consent search for drugs where some further entry within the object of the consent search was required.

In *U.S.* v. *Springs* (D.C.Cir. 1991) 936 F.2d 1330, 1331-1332 [290 App.D.C. 273], the court upheld the opening of a can of baby powder which showed pry marks—and was later found to contain cocaine base—during the consent search of a tote bag. Before consenting to the search of the bag and other items at a bus station, the defendant was informed by the police officer that he was with the narcotics interdiction unit and was attempting to intercept street drugs before they were sold on the streets. The *Springs* court applied the reasoning of *Florida* v. *Jimeno* and then implicitly distinguished *Wells*: "[T]he Supreme Court expressly distinguished the circumstances of *Jimeno* from the case in which the subcontainer is locked and cannot be searched without being broken open. The *Jimeno* Court determined that '[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk.' *Id.*, at __, 111 S.Ct. at 1804. We appreciate the distinction, but note that in the present case the evidence supports a view that the opening of the baby powder container did not depend upon possession of a key, knowledge of a combination, or anything other than merely removing its lid. Neither did the fact of its opening render it useless, anymore than the opening of the folds destroyed the usefulness of the paper bag in *Jimeno*. Therefore, we await with the Supreme Court the day when the locked briefcase comes before us." (*Id.* at pp. 1334-1335.)

*Search Here Survives Current Jimeno Test*

■ The search of the door panel here survives the current *Jimeno* test of objective reasonableness.[6] Crenshaw separately consented to the search of the trunk, glove compartment and interior of the vehicle knowing that the object of the search was drugs. Crenshaw was described as very polite and cooperative the entire time; in fact, he retrieved the keys from the vehicle

---

[6]*People* v. *Cooney* (1991) 235 Cal.App.3d Supp. 1 [286 Cal.Rptr. 765], the only published California case to discuss *Florida* v. *Jimeno* to date, is not helpful to our disposition here.

and opened the trunk for the officer. Although seated a short distance away in a police vehicle (because of outstanding arrest warrants) at the time the panel was removed, there is no indication in the record Crenshaw ever expressly or impliedly made any attempt to limit the scope of the search as it progressed during the period he remained outside the vehicle or at the time he was placed in the police vehicle. (*Florida* v. *Jimeno, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 303, 111 S.Ct. at p. 1804]; *United States* v. *Pena, supra,* 920 F.2d at p. 1515; *United States* v. *Espinosa, supra,* 782 F.2d at p. 892.)

Crenshaw knew the object of the officer's search, to wit, drugs. No reasonable person would expect narcotics to be scattered loosely throughout the vehicle. "[N]arcotics are generally carried in some form of a container." (*Florida* v. *Jimeno, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 303, 111 S.Ct. at p. 1804].) Here, to an experienced officer the suspicious door panel was not an unlikely repository of narcotics.[7] It reasonably could be expected to contain the object of the search. As noted, *ante,* a consent search, to be effective, must be thorough. (*United States* v. *Torres, supra,* 663 F.2d at p. 1027; see also cases cited in *U.S.* v. *Fong* (D.Del. 1987) 662 F.Supp. 1319, 1323.) Crenshaw's consent to search the car for drugs, under these facts, included consent to remove the door vent and search the door panel which might reasonably hold drugs. (*Florida* v. *Jimeno, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 303, 111 S.Ct. at p. 1804].)

Unlike the situation in *Wells,* there is no evidence the door vent was mutilated, rendered useless or otherwise damaged during the process of removal, any more than the baby powder container in *Springs* suffered damage. The officer did not rip the vent from the door; he merely loosened a screw with a screwdriver and removed it. The trial court did not err.

While this holding is contrary to the result reached on the scope of the consent to search a vehicle in *U.S.* v. *Garcia, supra,* 897 F.2d at pages 1419-1420, it is not contrary to the reasoning of that court in light of *Florida* v. *Jimeno, supra.* The *Garcia* court stated when there is consent to search a vehicle for drugs and weapons, "police can only search areas these items may reasonably be expected to be found." (*Id.* at p. 1419.) The Supreme Court in *Jimeno* was in agreement with that basic proposition, but expanded the range of what could be considered a reasonable area to explore pursuant to a consent search of a vehicle for drugs.

■ Finally, respondent correctly concedes the abstract of judgment in case No. 29995 must be amended by striking a reference to a $2,000

---

[7]Officer Randolph joined the Highway Patrol more than 20 years prior to the search of Crenshaw's vehicle and had participated in special drug interdiction training on the state and local levels.

restitution fine presumably imposed on an unrelated case (Tulare County Super. Ct. action No. CR 003960-A) at the time of sentencing. The oral pronouncement of judgment at sentencing makes no mention of imposition of such a fine in action No. 29995, and the oral pronouncement of judgment is controlling. (*People* v. *Mesa* (1975) 14 Cal.3d 466, 471-472 [121 Cal.Rptr. 473, 535 P.2d 337].)

### DISPOSITION

The judgment is modified by striking the reference to the $2,000 restitution fine allegedly imposed in Tulare County Superior Court action No. 29995, and as so amended the judgment is affirmed.

Martin, Acting P. J., and Thaxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 31, 1992. Mosk, J., was of the opinion that the petition should be granted.