Filed 9/5/14  P. v. MacDonald CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GORDON PRIDE MACDONALD,<br><br>    Defendant and Appellant. | H040267<br>(Santa Cruz County<br>Super. Ct. No. F24335) |

Defendant Gordon Pride MacDonald was found in possession of methamphetamine and a glass pipe during a search of a vehicle in which he was a passenger.  Both MacDonald and the vehicle's driver consented to a search of the vehicle, during which the officer found the drugs in MacDonald's backpack.  Following an unsuccessful motion to suppress the evidence seized during the search, MacDonald pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  The trial court suspended imposition of sentence and placed MacDonald on probation for three years.  On appeal, MacDonald challenges the denial of his motion to suppress and contends that one of his conditions of probation is unconstitutionally vague. We modify the dispositional order as discussed below and affirm the order as modified.

## I.    FACTUAL BACKGROUND

Our summary of the facts is taken from the testimony at the August 14, 2013 suppression hearing.

Santa Cruz Sheriff's Deputy Wiley Griffin-Bagno testified that, shortly after midnight on February 25, 2013, he observed a white truck parked illegally in a location known for narcotics activity and burglaries. Deputy Griffin-Bagno determined that the truck was registered to Lonnie Locatelli--someone Deputy Griffin-Bagno knew to have been involved with stolen vehicles, narcotics, and other crimes--and that the truck's registration was expired.

When Deputy Griffin-Bagno approached the vehicle, he did not recognize its three occupants. Lance Vomvolakis was in the driver's seat, MacDonald was in the passenger seat, and Victoria Todd was sitting in the middle of the truck's bench seat. There was a backpack at MacDonald's feet. Vomvolakis told Deputy Griffin-Bagno that he had recently purchased the truck. At Deputy Griffin-Bagno's request, all three occupants provided identification. MacDonald did so after getting out of the vehicle and reaching into the backpack sitting on the floor of the truck. Deputy Griffin-Bagno assumed MacDonald had gotten the identification from the backpack, but he did not actually see MacDonald pull it out of the backpack.

Deputy Griffin-Bagno asked Vomvolakis if there was anything illegal in the truck "such as weapons or illegal narcotics." Vomvolakis said there was not and consented to a search of the truck. Deputy Griffin-Bagno testified that both passengers likewise responded that "there was nothing illegal and it was okay to search the vehicle." In searching the vehicle, Deputy Griffin-Bagno opened and searched the backpack. At no time did any of the truck's occupants verbally claim ownership of the backpack. Deputy Griffin-Bagno explained that the manner in which MacDonald had manipulated the backpack earlier caused him to suspect MacDonald was hiding something in the bag. Inside the backpack, Deputy Griffin-Bagno found MacDonald's identification, mail addressed to MacDonald, and a tin containing what was later determined to be crystal methamphetamine. Under the seat where MacDonald had been seated, Deputy Griffin-Bagno found a small brown pouch containing a glass pipe of the type used to smoke

2

crystal methamphetamine.

## II.    PROCEDURAL BACKGROUND

The Santa Cruz County District Attorney filed an information on June 25, 2013, charging MacDonald with one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 1) and one count of misdemeanor possession of an injection or smoking device (*id*., § 11364.1, subd. (a), count 2).

MacDonald filed a motion to suppress in which he argued that the search of his backpack violated his Fourth Amendment rights.  The People opposed the motion on the ground that MacDonald had consented to the search of the vehicle, and that his consent extended to the search of the backpack.  MacDonald responded that he lacked standing to consent to a vehicle search, such that any consent he gave was invalid.  He further argued that Vomvolakis lacked both actual and apparent authority to consent to a search of the backpack.

Following the suppression hearing, the trial court denied the motion.  In doing so, the court initially stated, "there is no consent given by Mr. MacDonald to search.  I mean, there is--"  The prosecutor then cut the court off to argue that MacDonald had consented.  After further argument by both sides, the court said:  "there is a dispute about the consent.  Let's assume that consent was given by Mr. Vomvolakis, Ms. Todd and Mr. MacDonald to search the vehicle.  There is no determination as to the specifics, but the officer when given consent to search can search containers."  "Assuming," on the other hand, that MacDonald "did not give consent," the court concluded that the officer reasonably could have believed Vomvolakis shared joint control or possession of the backpack, such that the search was within the scope of Vomvolakis's consent.  In making that ruling, the court noted that the prosecutor "argued consent, but I think the [apparent authority] analysis is very important."

MacDonald entered into a negotiated plea agreement with the People on October 15, 2013.  Pursuant to that agreement, MacDonald pleaded no contest to the count 1

3

charge of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The trial court dismissed the count 2 misdemeanor charge of possession of an injection or smoking device (*id*., § 11364.1, subd. (a)) in the interests of justice, suspended imposition of sentence, and placed MacDonald on formal probation for 36 months, subject to various conditions.

MacDonald timely appealed.

## III. DISCUSSION

On appeal, MacDonald challenges the denial of his motion to suppress and urges that one of his probation conditions is unconstitutionally vague. We address each contention in turn.

### A. *Suppression Motion*

#### 1. *Standard of Review*

"In reviewing a suppression ruling, 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found.' " (*People v. Lomax* (2010) 49 Cal.4th 530, 563.) We will affirm the trial court's ruling if correct on any theory of applicable law. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

#### 2. *General Search and Seizure Principles*

The Fourth Amendment to the United States Constitution bans all unreasonable searches and seizures. (*United States v. Ross* (1982) 456 U.S. 798, 825.) "The ultimate standard set forth in the Fourth Amendment is reasonableness." (*Cady v. Dombrowski* (1973) 413 U.S. 433, 439.) "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." (*Bell v. Wolfish* (1979) 441 U.S. 520, 559.) " '[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . .' " (*South Dakota v. Opperman* (1976) 428

4

U.S. 364, 375.)

Warrantless searches are presumed to be unreasonable, " 'subject only to a few specifically established and well-delineated exceptions.' " (*People v. Diaz* (2011) 51 Cal.4th 84, 90.)  One "recognized exception to the Fourth Amendment's proscription against warrantless searches is a search that is based upon consent." (*People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1198 (*Walker*).)  Valid consent may be given by (1) the person whose property or place is searched, (2) a third party who possesses common authority over that property or place, or (3) a third party who the police reasonably believe has such common authority.  (*Id.* at pp. 1198-1199; *People v. Baker* (2008) 164 Cal.App.4th 1152, 1158 (*Baker*); *People v. Boyer* (2006) 38 Cal.4th 412, 445.)  "[W]here the facts available to the officer at the time of the search would lead a reasonable person to believe 'that the consenting party had authority over the premises [or property]' [citation], the search is valid even if it ultimately turns out that no actual authority to consent existed." (*Walker*, *supra*, at p. 1205.)  Put differently, "[t]he law . . . permits a search based upon consent by a person with apparent authority where the officers conducting the search reasonably believe that the person is empowered to give that consent." (*Id.* at p. 1199; *Illinois v. Rodriguez* (1990) 497 U.S. 177, 186 [warrantless search based upon consent of third party is valid where police reasonably believe the consenting party has authority over the premises].)

"A consensual search may not legally exceed the scope of the consent supporting it." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408 (*Crenshaw*).)  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251 (*Jimeno*).)  "Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances." (*Crenshaw*, *supra*, at p. 1408.)

The People maintain the court's denial of the motion to suppress may be affirmed on either of two theories. First, they contend MacDonald consented to the search of the truck and that consent extended to the backpack. Second, they maintain Vomvolakis had apparent authority to consent to a search of the backpack, such that his consent to search the truck authorized a search of the backpack. We begin with the second theory, which is the one on which the trial court relied.

### 3. The Officer Could Not Reasonably Have Believed the Driver Had Apparent Authority to Consent to a Search of the Backpack

In *Baker*, our colleagues in the Fifth District applied the apparent authority doctrine set forth above to the search of a closed container belonging to a passenger during a consensual vehicle search. There, the defendant was the passenger in a vehicle driven by a parolee who had consented to warrantless searches as a condition of his parole. Following a legal vehicle stop, police searched the vehicle, including defendant's purse, where they discovered drugs. The appellate court concluded the search of defendant's purse was unconstitutional because police could not reasonably have believed that "the purse belonged to the driver, that the driver exercised control or possession of the purse, or that the purse contained anything belonging to the driver." (*Baker*, *supra*, 164 Cal.App.4th at p. 1159.) For that conclusion, the court relied on the following facts: (1) defendant was "the sole female passenger"; (2) the purse was "distinctly feminine"; (3) the purse was located at defendant's feet; and (4) "a purse is not generally an object for which two or more persons share common use or authority." (*Id.* at p. 1160.) According to the court, defendant's "failure to assert ownership over the purse or take it with her when she exited the vehicle" (*ibid.*, fn. omitted) did not "constitute implied consent or prove joint ownership or control." (*Ibid.*)

The *Baker* court cited a slew of cases from other jurisdictions similarly holding that a driver's consent to a vehicle search did not extend to passengers' closed containers: "(See *State v. Suazo* [(1993)] 627 A.2d 1074 [driver had no authority to consent to search

6

of passenger's luggage; officers' belief that driver could validly consent to search held unreasonable]; *State v. Williams* (1980) 48 Ore.App. 293 [vehicle owner's consent to search of vehicle held not reasonably construed as permission for search of closed and latched stereo cassette tape case belonging to passenger]; *State v. Zachodni* (S.D. 1991) 466 N.W.2d 624, 628-629 [driver's consent to search of vehicle not reasonably construed as permission to search wife's purse, who was passenger in vehicle]; *People v. James* [(1994)] 645 N.E.2d [195] at p. 203 . . . [driver had no authority to consent to search of passenger's purse]; *State v. Friedel* [(Ind.Ct.App. 1999)] 714 N.E.2d [1231,] 1240-1241 [same]; *State v. Caniglia* (1993) 1 Neb.Ct.App. 730 [evidence suppressed because passenger's makeup purse not item that police could reasonably believe belonged to male driver or which male driver would possess sufficient relationship to or common authority over]; see also *United States v. Welch* [(9th Cir. 1993)] 4 F.3d 761, 765 [passenger's consent to search of car did not permit search of companion's purse].)" (*Baker*, *supra*, 164 Cal.App.4th at p. 1161.)

In *State v. Harding* (Utah 2011) 282 P.3d 31, 35 (*Harding*), the Utah Supreme Court conducted a thorough review of cases applying the apparent authority framework in the automobile context. It concluded that courts generally "engage[] in a fact-specific, totality-of-the-circumstances inquiry to determine whether it would have been reasonable for the police officer to believe that the driver had the authority to consent to the search of the passenger's belongings." (*Ibid.*) Among the relevant factors courts consider are (1) whether the container searched is of the type that two or more persons might be expected to share; (2) the passenger's conduct, including whether he objects to the search of his belongings; (3) whether the container bears a tag indicating it does not belong to the driver; (4) the number of occupants in the vehicle, with "the reasonableness of an officer's belief that the driver has authority over all the contents of a vehicle decreas[ing] as the number of occupants and the number of items in the vehicle increase[s]" (*id*. at p. 39); and (5) whether the container is located in or near the area in which the passenger

7

was sitting. (*Id.* at p. 38.) Some of these same factors were deemed significant by the *Baker* court, including the nature and location of the container. (See also *People v. Boyd* (1990) 224 Cal.App.3d 736, 746 [identifying the "appearance of the object searched" as "but one of many factors to consider in assessing whether the reasonable suspicion standard was satisfied"].) With this framework in mind, we turn to the facts of this case to determine whether Deputy Griffin-Bagno reasonably could have believed that Vomvolakis had joint control over the backpack.

We begin with the type of container, a backpack. The People argue, without citation to any authority, that a backpack "is not a container suggesting individual ownership." Multiple courts have concluded, to the contrary, that " 'a backpack, like [a] purse . . . , is generally not an object for which two or more persons share common use and authority.' " (*Harding*, *supra*, 282 P.3d at p. 37, quoting *Norris v. State* (Ind.Ct.App. 2000) 732 N.E.2d 186, 191; see also *United States v. Meier* (10th Cir. 1979) 602 F.2d 253, 255 ["a backpack, like a suitcase, is a 'repository for personal items when one wishes to transport them' "]; *U.S. v. Munoz* (8th Cir. 2010) 590 F.3d 916, 923 (*Munoz*) [implicitly concluding that a backpack generally is controlled by a single person in suppressing evidence obtained during search of backpack].) We tend to agree that a backpack usually is a private, rather than a shared, container. Thus, the nature of the object searched does not support the reasonableness of the officer's belief that Vomvolakis's consent extended to the backpack.

The location of the backpack, at MacDonald's feet, likewise suggested Vomvolakis lacked joint control over the item. (See *Baker*, *supra*, 164 Cal.App.4th at p. 1160 [finding "no reasonable basis to believe the purse belonged to anyone other than the sole female passenger" where purse "was located at her feet"]; *Munoz*, *supra*, 590 F.3d at p. 923 [officer's search of a backpack on the floorboard of the front passenger area was unreasonable because "there were two people in the car who each had been sitting in the passenger seat during the trip"]; *State v. Friedel*, *supra*, 714 N.E.2d at p. 1240 (*Friedel*)

8

[officers could not reasonably have believed driver had authority to consent to search of purse where "the purse on the floor in the back seat where [defendant] had been sitting"]; *State v. Caniglia*, *supra*, 510 N.W.2d at p. 374 [suppressing evidence obtained during the search of a passenger's make-up purse when the purse was found under the seat in which the passenger was sitting].)

That the truck was "messy" and contained three occupants does not support the reasonableness of the search, as the People contend. If anything, "it is less reasonable for an officer to assume that a driver has authority over the contents of a vehicle when there are multiple items and several passengers in the vehicle." (*Harding*, *supra*, 282 P.3d at p. 39 & fn. 13, citing cases.)

Finally, MacDonald's conduct made it unreasonable for the officer to believe that the backpack belonged to the driver. While MacDonald did not verbally state that the backpack was his, he demonstrated control over the item when he searched through it to retrieve his identification. That he did not object to the search is not particularly enlightening, as the record does not disclose whether MacDonald observed the backpack search occur. Even assuming he had the opportunity to object, his silence is not dispositive. (See *Baker*, *supra*, 164 Cal.App.4th at p. 1160 ["failure to protest a search or to assert a claim of ownership does not constitute implied consent or prove joint ownership or control"]; *Friedel*, *supra*, 714 N.E.2d at p. 1241 [finding warrantless search of passenger's purse to be unconstitutional even where she failed to object to the search].)

Based on the totality of the circumstances available at the time, it was unreasonable for Deputy Griffin-Bagno to have believed that Vomvolakis had authority to consent to the search of the backpack.

4.      *MacDonald Consented to the Search of his Backpack*

The People also maintain that MacDonald's own consent to search the truck authorized the backpack search. We agree.

9

Whether consent was granted, and the scope of that consent, are questions of fact. (*People v. Kinard* (1962) 210 Cal.App.2d 85, 87 ["existence of . . . consent [to search] is a question of fact to be determined by the trial court"]; *Crenshaw*, *supra*, 9 Cal.App.4th at p. 1408.) Here, the trial court expressed doubts as to whether MacDonald consented but made no determination of the question, instead opting to resolve the motion under the apparent authority doctrine. And because the record "affirmatively indicates that the trial court did not pass upon the factual issue [of consent], a finding [of consent] may not be implied." (*People v. Superior Court* (1970) 9 Cal.App.3d 203, 211.) Thus, we can uphold the search on the theory that MacDonald consented only if " 'the facts bearing on the legality of the search are undisputed and establish as a matter of law that the evidence is or is not admissible.' " (*People v. Bradford* (1972) 28 Cal.App.3d 695, 700.)

The relevant facts are undisputed: MacDonald said it was "okay" to search the truck after Deputy Griffin-Bagno asked if there were any weapons or illegal narcotics in the vehicle. Thus, we turn to the question whether the search was, as a matter of law, a legal consensual search. Two issues that arise when the state seeks to justify a warrantless search by relying on consent are *authority* to consent and the *scope* of the search. With respect to authority, the issue is whether the person giving consent had the requisite authority over the premises, object, or container searched. With respect to scope, the question is whether the consent given extended to the premises, object, or container searched. (*People v. Jenkins* (2000) 22 Cal.4th 900, 974 (*Jenkins*).)[1]

The People maintain that the backpack search was valid because MacDonald had authority over the backpack and the backpack was within the scope of his consent to search the truck. By contrast, MacDonald contends that his lack of authority over the

_____

[1] As discussed above, "the state may carry its burden by demonstrating that it was objectively reasonable for the searching officer to believe that the person giving consent had authority to do so, and to believe that the scope of the consent given encompassed the item searched." (*Jenkins*, *supra*, 22 Cal.4th at p. 974.)

10

truck invalidates his consent, regardless of its scope.  MacDonald appears to assume that authority and scope must be analyzed successively and in isolation.  But his approach does not withstand scrutiny.  Consider, for example, the issue addressed above--whether Vomvolakis validly consented to the backpack search.  Beginning with authority to grant the requested consent, as MacDonald proposes, the first question is whether Vomvolakis had authority to respond affirmatively to the officer's request to search the truck.  Yes.  Therefore, we can move on to the issue of scope.  Was the backpack within the scope of that consent?  As discussed below, yes.  (See *People v. Williams* (1980) 114 Cal.App.3d 67, 73 [consent to search a vehicle "authorize[s] a search of all compartments in the automobile and of any containers found within those compartments"]; *Jimeno*, *supra*, 500 U.S. at p. 251 [officer could reasonably conclude that general consent to search suspect's car for drugs included consent to examine a paper bag lying on the car floor].)  Thus, an approach that segregates the authority and scope inquiries in the manner MacDonald advocates yields the wrong result because it ignores whether Vomvolakis possessed authority over the backpack.

The better approach, in our view, focuses on the item searched, here the backpack.[2]  As noted, MacDonald had the authority to consent to a search of his backpack.  Thus, the only question is whether "the typical reasonable person [would] have understood . . . the exchange between" Deputy Griffin-Bagno and MacDonald as authorizing a search of the backpack.  (*Jimeno*, *supra*, 500 U.S. at p. 251.)  "The scope of a search is generally defined by its expressed object," here, weapons and drugs.  (*Ibid.*)  Courts consistently have held that general consent to search a vehicle for drugs may

---

[2] Significantly, here, the driver consented to a vehicle search.  As the People acknowledge, absent that consent, Deputy Griffin-Bagno's search of the truck would have been unconstitutional.  The question before us, then, is whether MacDonald's consent authorized a search of the backpack located in a truck otherwise subject to a valid search.

reasonably be construed as including "consent to search containers within that car which might bear drugs." (*Ibid.*; see also *Crenshaw*, *supra*, 9 Cal.App.4th at p. 1415 ["*Crenshaw's* consent to search the car for drugs, under these facts, included consent to remove the door vent and search the door panel which might reasonably hold drugs"]; *People v. $48,715 United States Currency* (1997) 58 Cal.App.4th 1507, 1516 ["The permissible scope of the search in this case extended to any part of the pickup where drugs reasonably may have been hidden."].) Likewise, here, it was objectively reasonable for the officer to construe MacDonald's response as consent to search the backpack, a container within the vehicle that could contain drugs.

For the foregoing reasons, we conclude as a matter of law that MacDonald's consent justified the warrantless search of his backpack. We note that, ideally, the officer would have requested MacDonald's permission to search the backpack itself. However, the Fourth Amendment does not demand perfection, only reasonableness. That standard was met here.

### B. Probation Condition No. 12

Among the probation conditions imposed by the court was probation condition No. 12, reading: "Do not frequent places where alcohol is the chief item of sale." MacDonald maintains that condition is unconstitutional because it lacks a scienter requirement and because the word "frequent" is vague. He requests that the probation condition be modified to read: "Do not visit or remain in any specific location where you know, or a probation officer informs you, alcohol is the chief item of sale." The People do not object to the proposed modification.

#### 1. Governing Law

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a

12

challenge on the ground of vagueness." (*Ibid*.)  In determining whether a probation condition affords the probationer adequate notice as to what is required, we are guided by two principles.  (*Ibid*.)  First, "abstract legal commands must be applied in a specific *context*.  A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness."  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116.)  Second, "the language used must have ' "*reasonable* specificity" ' " only, not " 'mathematical certainty.' "  (*In re Sheena K.*, *supra*, at p. 890.)  A probation condition is sufficiently specific " ' "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." ' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.)

"[T]he law has no legitimate interest in punishing an innocent citizen who has no knowledge of the presence of a [prohibited item]."  (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752 [modifying probation condition to prohibit knowing possession of a firearm or ammunition].)  Accordingly, courts have consistently ordered modification of probation conditions to incorporate a scienter requirement where a probationer could unknowingly engage in the prohibited activity.  (*In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913 [modifying probation condition to prohibit knowing presence of weapons or ammunition]; *In re Justin S.* (2001) 93 Cal.App.4th 811, 816 [modifying prohibition on association with gang members to prohibit association with known gang members]; *In re Kacy S.* (1998) 68 Cal.App.4th 704, 713 [modifying probation condition that defendant not associate with any persons not approved by his probation officer].)

        2.    *Analysis*

As a threshold matter, we note that while MacDonald did not challenge the condition in the trial court, we nevertheless may review its constitutionality as a matter of law without reference to the sentencing record.  (*In re Sheena K.*, *supra*, 40 Cal.4th at pp. 888-889.)

13

We agree with both of MacDonald's criticisms of probation condition No. 12. The word " 'frequent,' " in its verb form, is vague given that it is "no longer in common usage." (*In re H.C.* (2009) 175 Cal.App.4th 1067, 1072.) And a scienter requirement is necessary, as MacDonald could unknowingly visit a place where alcohol is the chief item of sale.

## IV.    DISPOSITION

Probation condition No. 12 is modified to read as follows:  "Do not visit or remain in any specific location where you know, or a probation officer informs you, alcohol is the chief item of sale."  As so modified, the disposition order is affirmed.

_____
Premo, Acting P.J.

WE CONCUR:

_____
Elia, J.

_____
Mihara, J.