Filed 10/23/13  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C072890 |
| Plaintiff and Respondent, | (Super. Ct. No. SF121050A) |
| v. | |
| JOSEPH LEE SMITH, | |
| Defendant and Appellant. | |

An information charged defendant Joseph Lee Smith with possession for sale of a controlled substance in violation of section 11378 of the Health and Safety Code, with the special allegation that he had been armed with a firearm during the commission of a narcotics felony in violation of Penal Code section 12022, subdivision (c) (count one).[1] The information also alleged that defendant had previously committed two strikes, as described in sections 667, subdivision (d) and 1170.12, subdivision (b).  The information further charged defendant with possession of a firearm by a felon with priors in violation

---

[1] Further undesignated statutory references are to the Penal Code.

1

of section 29800, subdivision (a)(1) (count two) and possession of ammunition by a prohibited person in violation of section 30305, subdivision (a)(1) (count three).

The trial court denied defendant's section 1538.5 motion to suppress and allowed the People to introduce evidence obtained by the police during the search of defendant's bedroom. In a subsequent proceeding, defendant pled guilty to counts one and two. In exchange, count three was dismissed and the two strikes were stricken.

The trial court sentenced defendant to a total of seven years in state prison and ordered a combined $638 in restitution fines and court fees.

On appeal, defendant contends that the trial court erred when it denied the motion to suppress evidence. Disagreeing, we shall affirm.

## FACTUAL AND PROCEDURAL HISTORY

*The Undisputed Facts*

On July 23, 2012 at around 12:00 in the morning, Officers Anna Laffranchini and Ryan Rankin, along with four other officers of the Stockton Police Department, arrived at a residence at 1118 South Drake Avenue in the city of Stockton, California. The officers had received a lead that a suspect named Evan Ryan might be staying or living at that residence. After arriving at the residence, Laffranchini and Rankin approached the door of the residence. Charlee Ryan answered the door. Ryan was the mother of the suspect but the officers did not learn of this fact until after the search. Ryan was also defendant's girlfriend. Defendant's father was the owner of the residence. Laffranchini questioned Ryan about the suspect and asked if the officers could come inside the house and look for the suspect.

*Officer Laffranchini's Testimony at the Suppression Hearing*

According to Laffranchini, after the officers requested permission to search the residence, Ryan informed the officers that she would have to ask defendant's father because he was the owner of the residence. Upon Laffranchini and Rankin's request, Ryan agreed to seek permission from defendant's father. Ryan then closed the door.

2

Ryan was only gone for 15 to 20 seconds. Ryan then returned and consented to one officer's entering the residence. Laffranchini believed that Ryan had obtained permission from defendant's father, but testified that she could have misunderstood what Ryan said. Ryan did not object when four officers entered the residence. The officers discovered the defendant sitting on a bed in a bedroom. Rankin asked to see defendant's hands and then walked to the other side of the bed. The officers then discovered narcotics in the defendant's bedroom closet.

*Officer Rankin's Testimony at the Suppression Hearing*

Rankin's testimony was consistent with Laffranchini's with the following exceptions: Rankin testified that Ryan was gone for "less than two minutes" (as opposed to Laffranchini's 15 to 20 second estimate) when she closed the front door and later returned. Rankin also added that upon discovering defendant in a bedroom, he asked defendant if he could search the other side of the bed and the closet and defendant consented.

*Charlee Ryan's Testimony at the Suppression Hearing*

Ryan testified that when the officers asked her if they could search the residence, she told them that she did not live there and had no authorization to consent to a search. After the officers repeatedly requested to search the residence, Ryan told them that she needed to talk to defendant and closed the door. Ryan spent three to five minutes trying to wake defendant but was unsuccessful. Ryan denied telling the officers that she would speak with defendant's father.

After returning to the door, Ryan noticed that the officers had the screen door slightly open and were advancing. Ryan believed that the officers were going to enter the residence regardless of her wishes. In an attempt to minimize any disturbance to defendant's elderly father, she stated, "can just one of you come in then, and please don't wake up [defendant's] dad." The officers then entered the residence.

3

*The Trial Court's Findings*

In denying defendant's the motion to suppress, the trial court found that the officers believed that Ryan had the ability to give consent. The trial court determined that because Ryan went back into the residence, came to the door again, and subsequently allowed the officers to enter, the officers had a reasonable and good faith belief that she had the authority to consent to the search.

## DISCUSSION

### I

*Standard of Review and Issues on Appeal*

When ruling on a section 1538.5 motion to suppress, the trial court "must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Ramos* (2004) 34 Cal.4th 494, 505.) "In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

Defendant contends that the trial court erred in denying his motion to suppress evidence. He maintains that the warrantless search of his home was unjustified, and that all fruits of the search should be suppressed, including the narcotics, the firearms and ammunition, and any statements made to police.

Specifically, defendant argues that Ryan could not give valid consent to search the home because she was not an occupant, and that a reasonable officer would realize that Ryan, as a non-occupant, could not consent. He adds that the evidence refutes any claim by the officers of good faith belief that Ryan secured consent from the property owner.

4

He maintains that even assuming valid consent, that consent was limited to *one* officer and did not extend to "private" bedrooms such as defendant's. Finally, and throughout, he argues that the trial court's findings are not supported by substantial evidence.

The People respond that defendant's motion to suppress evidence was properly denied because the officers had a valid good faith belief they had been given consent to search the residence. They add that Ms. Ryan was a person with at least apparent, if not actual, authority to consent to the search of the residence.

## II

### *Analysis*

#### A.    *Warrantless Searches*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects . . . against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause, supported by oath or affirmation[.]" (U.S. Const., 4th Amend.)  Evidence obtained in violation of the Fourth Amendment must be excluded. (*Wong Sun v. United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441].)  A warrantless search is presumed to be unreasonable and the prosecution bears the burden of demonstrating a legal justification for it. (*People v. Williams* (1999) 20 Cal.4th 119, 127.)  However, the "ultimate touchstone of the Fourth Amendment is 'reasonableness'" and "the warrant requirement is subject to certain exceptions." (*Brigham City v. Stuart et al.* (2006) 547 U.S. 398, 403 [164 L.Ed.2d 650, 657].)

Consent is a recognized exception to the warrant requirement. (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 181 [111 L.Ed.2d 148] (*Rodriguez*).)  Consent is valid when it is obtained from the property owner or from a third party who possesses common authority over the premises. (*Ibid.*)  Officers may also rely on the consent of a person whom they reasonably and in good faith believe has the authority to consent. (*People v. Ledesma* (2006) 39 Cal.4th 641, 703.)  However, "the good faith rule does not apply where the relationship of the third party and the defendant makes clear that the defendant

5

has not authorized the third party to act as his agent." (*People v. McGrew* (1969) 1 Cal.3d 404, 413 (*McGrew*).) The Ninth Circuit has held that a third party does "[have] actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent . . ." (*United States v. Davis* (2003) 332 F.3d 1163, 1169.)[2]

"A consensual search may not legally exceed the scope of the consent supporting it." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408.) However, an attempt to consent only to a limited number of officers will not succeed as a valid limitation because consenting to the search of an area waives any privacy interest in that area. (*People v. Valencia* (2011) 201 Cal.App.4th 922, 938 (*Valencia*); see also *United States v. Rubio* (9th Cir. 1983) 727 F.2d 786, 797 (*Rubio*).)

B.      *Authority to Consent and Substantial Evidence*

The trial court determined that the officers reasonably relied on what they believed to be Ryan's actual authority to consent to the search. The trial court found that the police believed that the homeowner had expressly authorized Ryan to consent to the search. While the record contains conflicting facts regarding Ryan's consent, there are facts in the record that support the trial court's findings.

Laffranchini and Rankin testified that they believed Ryan had retreated inside the residence to seek permission for the officers to enter the home from the owner. When Ryan returned to the door, she asked the officers, "can just one of you come in then, and please don't wake up [defendant's] dad." Laffranchini perceived Ryan's statement as consent to search. Believing that Ryan had secured consent from the owner of the residence, four officers entered the residence.

---

[2] "[A]lthough we are bound by decisions of the United States Supreme Court interpreting the federal Constitution [Citations], we are not bound by decisions of lower federal courts even on federal questions but they are considered persuasive and entitled to great weight." (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

Relying on *Rodriguez*, defendant argues that it was incumbent on the officers to make further inquiries and verify that the property owner actually gave Ryan the authority to consent. In *Rodriguez*, the Supreme Court stated, "[e]ven when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment. . . . 'warrant a man of reasonable caution in the belief" that the consenting party had authority over the premises?" (*Rodriguez, supra*, 497 U.S. at p. 188 [111 L.Ed.2d 148].)

*Rodriguez*, however, applied an objective standard based on the facts "available to the officer at the moment." (*Rodriguez, supra*, 497 U.S. at p. 188 [111 L.Ed.2d 148].) Here, in contrast, the trier of fact made a credibility determination after weighing the evidence presented to it. Laffranchini and Rankin both testified at the suppression hearing that Ryan agreed to seek consent from the property owner, retreated inside for a period of time and then returned to the front door, and ultimately said at least one officer could enter. The trial court determined the evidence presented at the suppression hearing supported the officers' reasonable and good faith belief that Ryan had the authority to consent to the search. "[I]t is settled that in ruling on a motion under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or write all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence." (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 (*Laiwa*).) Here, the record supports the trial court's findings without the need to impose an additional duty to inquire on the officers present at the scene.

7

C.      *Scope of Consent*

According to Laffranchini's testimony at the hearing, Ryan consented to the search of the residence by one officer. "By consenting to a warrantless search, one waives the right protected by the Fourth Amendment." (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1012.) It is "seriously doubt[ful]" that the consenter's expectation of privacy is further diminished by the entry of additional officers. (*Valencia*, *supra*, 201 Cal.App.4th at p. 938; see also *Rubio*, *supra,* 727 F.2d at p. 797.) Further, there is no evidence that Ryan objected or revoked consent when four officers entered the residence. Rankin, upon discovering defendant in a bedroom, asked defendant if he could search the other side of the bed and the closet. Defendant consented to the search of the bedroom and the open closet. After shining his flashlight in the closet, Rankin immediately discovered the narcotics in the closet. "[W]hether a lawful entry and search is based upon exigent circumstances or consent, the law is clear that any incriminating evidence observed in plain view may be seized." (*People v. Superior Court (Chapman)*, *supra,* 204 Cal.App.4th at p. 1012.)

Defendant argues that if Ryan gave consent, she explicitly limited the scope of consent. He contends that Ryan's request to the officers to not wake up his father excluded bedrooms from any consent given. Defendant cites *Florida v. Jimeno* (1991) 500 U.S. 248 [114 L.Ed.2d 297] (*Jimeno*) in support of his position. The Supreme Court in *Jimeno* required an explicit limitation by the consenter. (*Jimeno,* 500 U.S. at pp. 251-252 [114 L.Ed.2d at p. 303].) Absent such express limitation, consent to a search for an object includes consent to search wherever the object might reasonably be found. (*Ibid.*) The officers in the instant case were searching for a person. At the suppression hearing, Rankin acknowledged that the closet in the bedroom was big enough for "a person to fit inside." The trial court could have reasonably determined that the closet was an area where the suspect might have been found. Witness credibility, as well as the weight to give testimony, are matters exclusively left to the trier of fact when substantial

8

evidence exists in the record.  (*Laiwa*, *supra*, 34 Cal.3d at p. 718.)  Here, as we have explained *ante*, substantial evidence supports the trial court's finding.

**DISPOSITION**

The judgment is affirmed.


                DUARTE          , J.


We concur:


       ROBIE         , Acting P. J.


       HOCH         , J.