Filed 7/18/16  P. v. Jackson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GLEN RICHARD JACKSON,<br><br>    Defendant and Appellant. | F071328<br><br>(Kern Super. Ct. No. LF010257C)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael B. Lewis, Judge.

Robert F. Kane, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Peña, J. and Smith, J.

Appellant Glen Richard Jackson appeals the denial of his motion to suppress the methamphetamine found in a search of his residence. Appellant claims he was illegally detained prior to the search and, if not, that any later search exceeded the bounds of his consent. For the reasons set forth below, we affirm.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

In response to a recent series of thefts, police officers in Kern County placed a GPS tracker in a piece of equipment so that its movements could be monitored. On or around August 19, 2014, the police received a signal indicating the equipment had been tampered with and was now located at 8300 Fuller Drive. Kern County Sheriff's Officer Casey Brunsell was dispatched to investigate the incident. No warrant was obtained to aid in the investigation.

When Officer Brunsell arrived at the Fuller Drive address, he encountered Donald Christy in the driveway. Mr. Christy was the owner of the Fuller Drive residence. He was questioned about the potential theft and admitted to stealing the equipment. Mr. Christy gave Officer Brunsell consent to search his residence and his backyard, and informed Officer Brunsell that there were other people living in a trailer in the backyard.

In searching the backyard, Officer Brunsell came across the previously mentioned travel trailer with its front door open. From the outside, Officer Brunsell could see appellant sleeping inside. Officer Brunsell called to appellant multiple times, until appellant awoke, identifying himself as a police officer and instructing appellant to come to him. Appellant complied. As appellant sat up, Officer Brunsell saw appellant was holding something in his hands. Officer Brunsell told appellant to place the object down and to come to the door. Again, appellant complied.

Officer Brunsell then asked appellant to step out of the trailer before explaining to appellant that he was conducting an investigation. Officer Brunsell asked appellant if he

---

**1** The facts are taken from the hearing on appellant's motion to suppress.

had any drugs or weapons. Appellant said no. Officer Brunsell then requested permission to search appellant's person and his trailer. Appellant agreed. No contraband was found on his person, but in searching the trailer Officer Brunsell discovered the object in appellant's hand when initially contacted was a pill bottle. Inside that pill bottle was a quantity of methamphetamine.

During this interaction, Officer Brunsell was wearing jeans, a button-up shirt, and had a tactical shell carrier to hold his police-issued gear. At no point did Officer Brunsell draw his gun or Taser.

Appellant moved to suppress the methamphetamine. The People opposed, arguing the initial contact was essentially a "knock and talk" and the later consent to search was valid. The court denied appellant's motion, finding "deputies were conducting a search related to stolen property" with the goal to "find all the parties that were in that location before they concluded or conducted their investigation." In that context, the court concluded the incident "was a brief temporary encounter with Mr. Jackson for the purpose of ensuring the safety of the officers to conduct that investigation."

Appellant subsequently pleaded guilty to possession of a controlled substance (Health & Saf. Code, § 11377) and was sentenced to probation. This timely appeal followed.

## DISCUSSION

Appellant contends his contact with Officer Brunsell amounted to an illegal detention, requiring suppression of all later discovered evidence. Appellant further argues that, if the detention is deemed legal, a search of the pill bottle exceeded the bounds of any consent to search he provided.

### *Standard of Review and Applicable Law*

Our standard of review for a motion to suppress is governed by well-established principles. (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 290.) "As the finder of fact in a proceeding to suppress evidence (Pen. Code, § 1538.5), the superior court is vested

3.

with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable." (*People v. Woods* (1999) 21 Cal.4th 668, 673.) "We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1134.) We then independently apply the requisite legal standard to the facts presented. (*People v. Celis* (2004) 33 Cal.4th 667, 679 (*Celis*).)

"In reviewing the sufficiency of the evidence, ' "[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] 'An appellate court must view the evidence in the light most favorable to [the prevailing party] and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'Reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.' " (*People v. Snead* (1991) 1 Cal.App.4th 380, 384.)

"The federal Constitution's Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Our state Constitution includes a similar prohibition. (Cal. Const., art. I, § 13.) 'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' [Citations.] Whether a seizure has taken place is to be determined by an objective test, which asks 'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' [Citation.] Thus, when police engage in conduct that would 'communicate[ ] to a reasonable person that he was not at liberty to ignore the police presence and go about his business,' there has been a seizure." (*Celis*, *supra*, 33 Cal.4th at p. 673.)

4.

### *The Police Contact with Appellant Does Not Constitute a Detention*

Appellant claims he was illegally detained when the police woke him up, called him to the front of his home, and asked him to come outside. We disagree. As appellant notes, an "officer may approach a person in a public place and ask if the person is willing to answer questions." (*People v. Brown* (2015) 61 Cal.4th 968, 974.) This is so because, unlike a detention, "a consensual encounter between a police officer and an individual does not implicate the Fourth Amendment." (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) As long as "a reasonable person would feel free to leave or end the encounter" there is no Fourth Amendment concern. (*Ibid.*) Critical to this case, such "[c]onsensual encounters may also take place at the doorway of a home." (*Ibid.*)

Here, Officer Brunsell legally approached the open door to appellant's home and, noticing appellant was sleeping, roused him and called him over. There was no explicit show of force and no indication in the record that Officer Brunsell's statements to "come to us" would be seen by a reasonable person as anything other than a request to talk. When appellant reached the door, the record shows only that he was "asked" to come outside. Once outside, appellant gave consent to the searches undertaken. Given this record, the trial court's denial of the motion to suppress is supported by substantial evidence showing the initial contact was the product of consent, not detention. (Cf. *People v. Lujano* (2014) 229 Cal.App.4th 175, 188 (*Lujano*) [noting contact with individual in home would have been proper had the officer "*invited* defendant to step outside of his home to talk, and defendant did so voluntarily" but that commanding defendant to back his way out of the home constituted a seizure].)

Officer Brunsell's instruction that appellant set down the object in his hands does not change the calculus. "Where a consensual encounter has been found, police may inquire into the contents of pockets [citation]; ask for identification [citation]; or request the citizen to submit to a search [citation]. It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen

5.

that guides us in deciding whether compliance was voluntary or not." (*People v. Franklin* (1987) 192 Cal.App.3d 935, 941.) The record here provides that Officer Brunsell "told [appellant] to leave that object on the counter top and come towards us." However, as noted above, in the broader context of the encounter there was no show of force, no weapons drawn, and ultimately a request that appellant exit the trailer and consent to various searches. On this record, substantial evidence exists to support the conclusion that appellant was free to decline or end the communications at any point.[2]

### *The Police Did Not Exceed the Scope of Appellant's Consent*

Appellant also contends Officer Brunsell exceeded the scope of any consent legally given when he searched inside of the pill bottle appellant set down when first approaching the officers. Again, we disagree.

" 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]' [Citation.] Generally, the scope of a warrantless search is defined by its expressed object. [Citation.] A consensual search may not legally exceed the scope of the consent supporting it. [Citation.] Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408, 1414-1415 [upholding removal of vent from car door as within scope of consent to a drug search].)

---

[2]    The People argue the encounter was a legal detention. We have our doubts. (See *Lujano*, *supra*, 229 Cal.App.4th at pp. 187-188 [finding detention of non-suspect in his home during course of theft investigation illegal and noting consent induced by illegal detention is invalid].) However, we need not reach this issue, as we may uphold the trial court's ruling based on any grounds contained in the record. (*People v. Superior Court* (2012) 204 Cal.App.4th 1004, 1011 [review confined to the correctness or incorrectness of the trial court's ruling].)

Contrary to appellant's contention that the "deputies did not even mention narcotics," the record shows appellant was asked whether he was in possession of any weapons or drugs. When he denied any such contraband, Officer Brunsell requested consent to search the trailer, which appellant gave. There is no indication in the record that this consent to search for drugs would not include the pill bottle appellant had voluntarily placed on the counter. (See *Florida v. Jimeno* (1991) 500 U.S. 248, 251 [consent to search car for drugs "included consent to search containers within that car which might bear drugs"].) We therefore conclude the search was conducted within the scope of the consent provided.

## DISPOSITION

The judgment is affirmed.