Filed 8/14/20  P. v. Silva CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH SILVA,<br><br>    Defendant and Appellant. | D075409<br><br><br>(Super. Ct. No. SCD276453) |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Reversed in part, affirmed in part.

Marianne Harguindeguy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury convicted Joseph Silva of attempted murder (Pen. Code, §§ 664 and 187, subd. (a); count 1);[1] discharging a firearm at an occupied vehicle (§ 246; count 2); child abuse or endangerment (§ 273a, subd. (a); count 3); unlawful possession of a firearm as a convicted felon (§ 29800, subd. (a)(1); count 5); and possessing methamphetamine for the purpose of sales (Health and Saf. Code, § 11378; count 6). The jury also found true allegations he personally used a shotgun in connection with count 1 (§ 12022.5, subd. (a)) and was personally armed with a firearm in connection with count 6 (§ 12022, subd. (c)). The court sentenced Silva to 19 years in state prison and imposed various fines and fees.

Silva contends on appeal: (1) there was insufficient evidence of intent to kill to support the verdict for attempted murder, (2) the court erred in denying a motion to suppress evidence found in Silva's house because either his consent was not free and voluntary or the search exceeded the scope of consent, and (3) the court violated his constitutional rights by imposing fines and fees without determining Silva's ability to pay. We conclude there is no merit to the first contention. The People concede that the scope of the search exceeded the consent given and that conviction for count 6 should be reversed. We conclude Silva forfeited the third contention, but even exercising our discretion to consider the issue, we conclude remand is not necessary in this case. Accordingly, we reverse the judgment of conviction as to count 6 and the associated firearm allegation and vacate the sentence as to count 6 only. In all other respects, we affirm the judgment.

# II

---

1      Statutory references are to the Penal Code unless otherwise stated.

BACKGROUND

A tow-truck driver was sent to repossess a vehicle from Silva.  The property was located on a long private drive off a public road.  An individual opened a gate to the property and confirmed Silva lived there.  The tow-truck driver located and began securing the vehicle.  The driver encountered a young child who asked what he was doing.  When the driver said he needed to talk to the child's parents, the child ran off.

A woman approached the driver in an aggressive manner.  Silva, who was carrying a shotgun, followed and asked in an aggressive manner what the driver was doing.  The driver identified himself as a repossession agent and said he was there to pick up the vehicle for the bank.  The driver said, "No one needs to get hurt over a vehicle."

When Silva and the woman began trying to take the straps off the wheels of the vehicle he was there to repossess, the driver took the opportunity to try to leave a dangerous situation.  He got into the tow truck and tried to leave.

When Silva realized the driver was leaving, Silva walked down the passenger side of the tow truck and pointed the barrel of the shotgun through the open passenger window.  The driver thought Silva was trying to shoot him based on Silva's aggressive demeanor and statements.

The driver shouted, "Hey!" to startle Silva long enough to get the tow truck rolling.  As the truck began to roll, the driver heard the shotgun go off.  He heard and felt the vibration of bullets hitting the cab of the tow truck.  Three bullets penetrated the cab of the tow truck, including one that dented a computer behind the seatback on the passenger side.

The driver called 911 as he drove toward the gate and reported Silva fired a shotgun at him.  A vehicle followed the tow-truck driver out of the

3

gate and blocked the driveway. Silva got out of the other vehicle and yelled at the driver to let down his vehicle. Silva got into the vehicle being towed and tried to drive it off the tow truck. When he was unsuccessful, Silva again tried to cut the straps with a knife to release the towed vehicle. Silva also tried to open the door to the cab of the tow truck, but it was locked.

Sheriff's deputies responded to the 911 call. The first responding deputy observed the driver in the cab of the tow truck, which was blocked by another vehicle. The deputy heard the truck on the back of the tow truck moving as though someone was trying to drive it off the tow truck. When the deputy contacted Silva, she ordered him to get down on the ground at gunpoint until another deputy arrived.

The deputies placed Silva in handcuffs and conducted a pat-down search. They located a knife, a butane lighter, and a clear plastic baggie containing four grams of methamphetamine on Silva. Silva denied shooting at anyone and said he did not have a gun or access to a gun.

Deputies searched the home. There was one bedroom and a makeshift bed surrounded by toys for a child in the living area. In the bedroom, deputies found a table and chair placed in a closet without a door. The table was set up with needles that appeared to contain heroin along with tie-offs. Next to the table, on or in a cardboard box, they found a black bag with a pill bottle sticking out. The bag contained syringes, a glass pipe, and a large spoon with white residue. In a second zippered bag, they found a pill case with the word "Norco" written on it. The bag contained a crystalline substance and more syringes. They also found small, plastic zippered storage baggies. The deputies impounded a bag containing 27 grams of methamphetamine and another bag containing 0.46 grams of methamphetamine. A detective testified the amount of methamphetamine

4

located in the home and on Silva indicated he possessed it for sale rather than for personal use.

The deputies did not locate the shotgun in the house. After viewing surveillance video from the tow truck showing Silva with the shotgun, Silva directed his girlfriend to take a deputy to the shotgun. It was hidden in a nearby shed, wrapped in a blanket. Deputies found an unspent round jammed in the gun.

## III

## DISCUSSION

## A

### *Sufficiency of Evidence for Attempted Murder*

Silva contends there was no substantial evidence of specific intent to kill to support the attempted murder conviction because Silva tried to stop the driver from taking his truck and "passed up opportunities" to kill the driver. We disagree.

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.) After viewing the evidence in the light most favorable to the prosecution, we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but

5

ineffectual act toward accomplishing the intended killing.' " (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Ibid.*)

Here, the jury rejected the defense argument that Silva did not intend to kill the driver and only intended to intimidate or stop the driver by shooting at the tires. Such a conclusion is supported by substantial evidence from the driver and video from the tow truck's surveillance cameras. Silva obtained the shotgun after speaking briefly with the driver. He checked it for bullets, racked it, placed his finger on the trigger, and pointed the gun at the driver. When the driver tried to escape the situation, Silva leveled the barrel of the shotgun through the window of the tow truck and again pointed it at the driver, who believed Silva was going to shoot him. Moments after the driver shouted at Silva and pulled the tow truck forward, Silva squared himself and fired the shotgun at the cab of the truck. The shot struck and penetrated the cab of the truck. If an onboard computer had not stopped one of the bullets, it likely would have penetrated the seatback on the passenger side. Deputies determined the shotgun had an unspent round jammed in the chamber, suggesting Silva tried to shoot twice. The act of firing a weapon toward a victim at close range in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient evidence to support an inference of intent to kill. (*People v. Smith* (2005) 37 Cal.4th 733, 741 (*Smith*).) "[T]hat the bullet misses its mark or fails to prove lethal [is not] dispositive." (*Id.* at p. 742.) "[T]he shooter's purposeful 'use of a lethal weapon with lethal force' against the victim, if otherwise legally unexcused, will itself give rise to an inference of intent to kill." (*Ibid.*)

The fact Silva did not make other attempts to kill the driver does not mean he did not intend to kill Silva when he shot the gun. " ' "The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance." ' " (*Smith*, *supra*, 37 Cal.4th at p. 741.)

B

*Motion to Suppress Evidence*

Silva contends the court erred in denying his motion to suppress all evidence found in the search of the home because either Silva did not give consent freely and voluntarily or the search exceeded the scope of the consent.

"Both the federal and state Constitutions prohibit unreasonable searches and seizures. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' [Citation.] ' "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " ' " (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1041.) In reviewing a decision on a motion to suppress evidence, "we will uphold those factual findings of the trial court that are supported by substantial evidence. The question of whether a search was unreasonable, however, is a question of law. On that issue, we exercise 'independent judgment.' " (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

1

We begin with the evidence presented at the hearing on the motion to suppress and the court's denial of the suppression motion.

The deputy sheriff who first responded observed the tires squealing on the vehicle on the back of the tow truck as if someone were trying to drive it

7

off the tow truck. The deputy drew a gun and ordered Silva to the ground as he walked toward the deputy. When the deputy's partner arrived, they placed him in handcuffs.

As Silva remained in handcuffs, the deputies explained they wanted to search his residence to make sure there were no other victims and to find the shotgun he was accused of possessing. When asked if he would sign a waiver form to consent to a search, Silva said he did not want to sign anything. The deputies asked Silva to sign a consent form several times. Eventually, Silva orally agreed the deputies could conduct a safety sweep of his residence and look for the shotgun. He still refused to sign a form.

A deputy testified he found a small amount of narcotics and drug paraphernalia in the search. The deputy also found items evidencing Silva's dominion and control over the residence and toys for a child. When questioned by the defense as to why he did "a full-blown search of the entire residence" for the shotgun, the deputy responded, "A shotgun can be anywhere." The deputy confirmed he found the paraphernalia and narcotics before the shotgun was found in a different location.

The court made findings of fact and conclusions of law after considering the evidence presented. The court found the deputies were credible and, although their testimony could have been more precise, the facts were substantially as they testified them to be. The court found Silva's consent was free and voluntary and concluded the People met their burden of establishing the lawfulness of the searches and seizures and, therefore, denied the motion to suppress.

## 2

Consent is an exception to the warrant requirement, but the People bear an additional "burden of proving that the defendant's manifestation of

consent was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citation.] The voluntariness of the consent is in every case 'a question of fact to be determined in the light of all the circumstances.' " (*People v. James* (1977) 19 Cal.3d 99, 106, fn. omitted.) "The question of the voluntariness of the consent is to be determined in the first instance by the trier of fact; and in that stage of the process, '[t]he power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence.' " (*Id* at p. 107.)

We conclude there is substantial evidence to support the trial court's finding that Silva's oral consent was freely and voluntarily given. Although Silva declined several times to sign a consent form, he ultimately consented to a search of his residence. The court inferred the consent was given in the context of a conversation just outside of the residence and not while he was on the ground. The court found there was no evidence of overt force or threats by the deputies and the officers were free to continue to ask for consent. The fact that Silva was in handcuffs when he gave consent does not alter our conclusion. "A 'person's in-custody status, even when he is handcuffed, does not automatically vitiate his consent; this is " 'but one of the factors, but not the only one, to be considered by the trial judge who sees and hears the witnesses and is best able to pass upon the matter.' " ' " (*People v. Byers* (2016) 6 Cal.App.5th 856, 864.)

3

Silva's consent does not end the inquiry, however. "A consensual search may not legally exceed the scope of the consent supporting it."

9

(*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408.) "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251.)

At oral argument, the People conceded the trial court did not make a factual finding about whether the bag of methamphetamine was discovered in plain view or was otherwise discovered within the scope of the consent given. Therefore, the People concede, and we agree, it is appropriate to reverse the conviction for count 6 and the accompanying firearm enhancement.[2]

The court imposed the maximum possible sentence for the count 1 conviction and the accompanying firearm enhancement under section 12022.5, subdivision (a), and either ran concurrently or stayed sentences for all the remaining counts. Specifically as to count 6, the court imposed, but ran concurrently, a three-year term. It exercised its discretion to strike the firearm enhancement as to count 6. Under these circumstances, because there are no sentencing choices to restructure, we may modify the sentence on appeal by vacating the sentence for count 6 only. (§ 1260; *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15; *People v. Francis* (2017) 16 Cal.App.5th 876, 887.)

---

[2]     We conclude the syringes found in plain sight on the table in the bedroom were sufficient to support the child abuse conviction under section 273a, subdivision (a).

## C

### *Fines and Fees*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Silva contends the court violated his due process rights by imposing fines and fees without first determining ability to pay. Silva asks us to vacate the fines and fees or remand the matter for determination of ability to pay. The People contend Silva forfeited his claim by failing to raise the issue with the trial court, but, in any event, remand is not necessary on this point. We agree with the People.

"At the core of the *Dueñas* opinion is its holding that imposition of fines, fees or assessments without a hearing on ability to pay denies due process. It was that court's view it was the trial court's duty to hold a hearing and thus failure to seek a hearing did not result in forfeiture. Further, the court found that the burden to prove 'present' ability to pay was on the prosecution. Other courts, including this court, have disagreed with *Dueñas* on these key principles." (*People v. Keene* (2019) 43 Cal.App.5th 861, 863 (*Keene*); see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 327 [rejecting the *Dueñas* due process analysis for fines and fees], review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 [applying excessive fine analysis for restitution fines]; and *People v. Kopp* (2019) 38 Cal.App.5th 47, 95–96, review granted Nov. 13, 2019, S257844 [concluding a defendant who requested ability to pay hearing bears burden of proof and applying due process analysis to court assessments and excessive fines analysis to restitution fines].)

The court here imposed the maximum restitution fine of $10,000 (§ 1202.4, subd. (b)) along with an additional restitution fine of $10,000 (§ 1202.45), which the court stayed unless supervision is revoked. The court

imposed a court security fee of $200 (§ 1465.8), the immediate critical needs account fee of $150 (Gov. Code, § 70373), a criminal justice administration fee of $154 (Gov. Code, § 29550.1), a drug program fee in the amount of $615 (Health & Saf. Code, § 11372.7), and a lab analysis fee of $205 (Health & Saf. Code, § 11372.5).

Silva did not object to the fines or fees or request an ability to pay hearing in the trial court at the time of sentencing, which was more than a month after the *Dueñas* case was published. (§ 1237.2; see *People v. Trujillo* (2015) 60 Cal.4th 850, 861 ["[T]he sentencing hearing is, in general, the proper time for a defendant to assert all available procedural and factual contentions relating to the trial court's sentencing choices …."].) "The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law prior to *Dueñas*." (*Keene*, *supra*, 43 Cal.App.5th at p. 864; see *People v. Nelson* (2011) 51 Cal.4th 198, 227 [forfeiture for failure to object to $10,000 restitution fine on grounds of ability to pay]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [forfeiture for failure to assert that the trial court must consider inability to pay when imposing more than the statutory minimum restitution fine].) Therefore, we conclude Silva forfeited the challenge to the restitution fines and fees. (*Keene*, at pp. 863–864.)

However, even exercising our discretion to consider the claim on the merits (see *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6), we conclude remand is not necessary. Because we exercise our discretion to consider the issue on the merits, we need not address Silva's assertion of ineffective assistance of counsel for failure to object to the fines and fees, which he raised for the first time in his reply brief.

First, we agree with the People that the restitution fine is constitutional. In the recent case of *People v. Son* (2020) 49 Cal.App.5th 565 the court concluded there is no constitutional requirement for a court to determine an ability to pay a restitution fine. The court explained, "fines imposed as punishment on their own, without conversion to incarceration as a consequence of being unable to pay, need not take account of ability to pay to be constitutionally acceptable," (*id.* at p. 593, italics omitted), because nonpayment would result merely in enforcement of a judgment for the debt. "[T]he Constitution does not prevent a state from enforcing a money judgment for a *punitive* fine against an indigent defendant." (*Id.* at p. 593 citing *Williams v. Illinois* (1970) 399 U.S. 235, 244, *Tate v. Short* (1971) 401 U.S. 395, 399, and *Bearden v. Georgia* (1983) 461 U.S. 660, 672.) Similarly, "the imposition of [a] restitution fine without regard to a defendants' ability to pay survives rational basis review and, in turn, is not unconstitutional." (*Son*, at p. 595.) A restitution fine, "being punishment, can properly be imposed on a defendant who is unable to pay it because … there is no fundamental unfairness in facing enforcement of a money judgment for a delinquent debt as a consequence of being unable to satisfy a monetary punishment …. [¶] … [T]here is no fundamental right not to be burdened by a punitive fine." (*Id.* at pp. 596; see also *id.* at p. 599 (conc. & dis. opn. of Franson, J.).)

Second, any error in imposing non-punitive fees and assessments without determining ability to pay, even if it was not forfeited, was harmless in this case. In *People v. Johnson* (2019) 35 Cal.App.5th 134 (*Johnson*), the court concluded any error in imposing a restitution fine and court fees and assessments without an ability to pay hearing was harmless because the record showed the defendant had some financial means and past income-

earning capacity as well an ability to earn prison wages. (*Id.* at pp. 137, 139–140; see *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035–1036 [same].) Similarly, the record here shows Silva is a skilled tradesman who owned and operated his own plumbing business for over a decade before this incident and his son continued to run the business after Silva was taken into custody. Silva submitted letters from clients attesting to his skill and work ethic. Silva will have an opportunity to work in prison and may employ his skills. Therefore, the record before us forecloses an inability-to-pay argument for the $1,324 in court fees and assessments imposed in this case and renders any error harmless. (*Jones*, at p. 1035; *Johnson*, *supra*, 35 Cal.App.5th at pp. 139–140; see *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [court may consider a defendant's future ability to pay restitution].)

IV

DISPOSITION

The judgment of conviction for count 6, possession of methamphetamine for sale under Health and Safety Code section 11378, and the accompanying enhancement under Penal Code section 12022, subdivision (c), is reversed. The sentence as to count 6 is vacated. In all other respects, the judgment is affirmed. Upon issuance of our remittitur, the trial court is directed to amend the abstract of judgment to strike the conviction and

14

sentence for count 6 and the accompanying enhancement and send a certified copy of our opinion along with the amended abstract of judgment to the Department of Corrections.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


AARON, J.


15